USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/23/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                              :

JUAN SANCHEZ CONTRERAS,            :
                                               :

                  Petitioner,   :                  1:26-cv-3938-GHW
                                               :

          -v-                    :                MEMORANDUM
                                               :          OPINION & ORDER

MARKWAYNE MULLIN, *et al.*,       :
                                               :

                 Respondents.  :

------------------------------------------------------------------ X

GREGORY H. WOODS, United States District Judge:

## I.     INTRODUCTION

Juan Sanchez Contreras, a citizen of El Salvador, entered the United States illegally in 2019.

He was detained by U.S. Immigration and Customs Enforcement ("ICE") on January 23, 2025.  Mr.

Sanchez Contreras has remained in custody since then.  Following an evidentiary hearing, an

immigration judge found sufficient evidence to conclude that Mr. Sanchez Contreras was a member

of MS-13, a notorious gang designated as a terrorist organization by the United States.  Therefore,

ICE has held him in custody pursuant to 8 U.S.C. § 1226(c) ("Section 1226(c)"), which requires the

detention of noncitizens who are members of a designated terrorist organization.

Mr. Sanchez Contreras filed this petition for *habeas corpus* relief, asserting that his continued

detention without a bond hearing—which as of this writing has lasted more than sixteen months—

violates due process.  His petition relies on the Second Circuit's opinion in *Black v. Decker*, 103 F.4th

133 (2d Cir. 2024) ("*Black*"), *cert. granted sub nom. Genalo v. Black*, No. 25-886, 2026 WL 1718025 (U.S.

June 15, 2026), in which the Second Circuit held that "a noncitizen's constitutional right to due

process precludes his unreasonably prolonged detention under section 1226(c) without a bond

hearing." *Id.* at 138.  Because Mr. Sanchez Contreras's sixteen months of detention without a bond

hearing is unreasonably prolonged, application of the rule established in *Black* requires that he be

provided a prompt bond hearing.  Therefore, Mr. Sanchez Contreras's petition for *habeas corpus* is GRANTED.

## II.    BACKGROUND[1]

### A.    Factual Background

#### 1.    Petitioner Flees El Salvador and Builds a Life in New York

Mr. Sanchez Contreras is a citizen of El Salvador.  Dkt. No. 1-1 ("Hesser Decl.") ¶ 4; Dkt. No. 16 ("Martinez Genao Decl.") ¶ 3.  He is now 23 years old.  Hesser Decl. ¶ 4.  Mr. Sanchez Contreras entered the United States without inspection on or about July 31, 2019, when he was 16 years old.  *Id.*; Martinez Genao Decl. ¶ 4.  He asserts that he fled to the United States from El Salvador after members of the notorious gang, MS-13, killed his stepbrother and cousin and threatened his parents.  Dkt. No. 1 ("Pet.") ¶ 21; Hesser Decl. ¶ 4.  Mr. Sanchez Contreras has resided continuously in the United States since he entered the country.  Hesser Decl. ¶ 4.

Several of Mr. Sanchez Contreras's family members live in the United States, including his father, Juan Pablo, and his stepmother, Mirna.  *Id.* ¶ 5.  He has a close relationship with both.  Growing up, Sanchez Contreras found school difficult and ultimately dropped out around sixth grade.  Pet. ¶ 22; Dkt. No. 8-1 ("Corral Report").  He asserts that he did so in order to begin working.  Pet. ¶ 22.

#### 2.    Petitioner's 2023 Arrest and Criminal Conviction

On September 13, 2023, the Suffolk County Police Department arrested Mr. Sanchez Contreras and charged him with menacing in the second degree, pursuant to N.Y.P.L. § 120.14(1), and criminal mischief, pursuant to N.Y.P.L. § 145.00(1).  Martinez Genao Decl. ¶ 6.  During the pendency of that case, he was released on his own recognizance.  Hesser Decl. ¶ 13.  On October

---

[1] The Court makes the following findings of fact, which are undisputed unless otherwise noted.  *See* 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require."); *see also Mendez Ramirez v. Decker*, 612 F. Supp. 3d 200, 207 n.2 (S.D.N.Y. 2020).

10, 2024, he pleaded guilty to menacing in the second degree and was sentenced to a conditional discharge; an order of protection was entered against him to protect his victim. Martinez Genao Decl. ¶ 7.[2]

### 3.    Petitioner's Arrest by ICE and the Initiation of Removal Proceedings

On January 23, 2025, ICE Enforcement and Removal Operations conducted an enforcement action against Mr. Sanchez Contreras pursuant to an arrest warrant. Martinez Genao Decl. ¶ 9. They found him in Huntington Station, New York. *Id.* ¶ 9; Hesser Decl. ¶ 6. After identifying Mr. Sanchez Contreras, ICE conducted a records check, which confirmed that Mr. Sanchez Contreras did not have legal status in the United States. Martinez Genao Decl. ¶ 9. ICE then arrested Mr. Sanchez Contreras pursuant to the arrest warrant. *Id.*

Mr. Sanchez Contreras was served that day with the warrant for his arrest and a Notice to Appear ("NTA") charging him as inadmissible as a noncitizen present in the United States without admission or parole under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* ¶ 13. ICE then detained Mr. Sanchez Contreras at the Orange County Correctional Facility ("OCCF") in Goshen, New York, where he remains today. Hesser Decl. ¶ 8; Martinez Genao Decl. ¶ 12.

Mr. Sanchez Contreras has been represented since on or about February 11, 2025 by the Bronx Defenders, through the New York Immigrant Family Unity Project. Hesser Decl. ¶ 2. On February 25, 2025, Mr. Sanchez Contreras, through counsel, admitted all of the factual allegations contained in the NTA. Martinez Genao Decl. ¶ 17. He conceded the sole charge of removability, establishing his removability. *Id.* The immigration judge ("IJ") designated El Salvador as the country to which Mr. Sanchez Contreras should be removed. *Id.*

On March 7, 2025, with the assistance of his counsel, Mr. Sanchez Contreras applied for

---

[2] Neither ICE nor DHS has ever contended that this conviction subjects Mr. Sanchez Contreras to mandatory detention under 8 U.S.C. § 1226(c). Hesser Decl. ¶ 14.

asylum, withholding of removal, and deferral of removal under the Convention Against Torture (the "CAT").  Pet. ¶ 34; Hesser Decl. ¶ 9.

### 4.    Petitioner's Motion for Custody Redetermination

Mr. Sanchez Contreras's counsel became concerned that Mr. Sanchez Contreras might suffer from cognitive delays.  Hesser Decl. ¶ 10.  As a result, she referred him for psychological evaluation and cognitive testing by Dr. Macarena Corral, a licensed psychologist.  *Id.*  Dr. Corral's report was filed with the immigration court on April 30, 2025.  *Id.* ¶¶ 10, 12.  Dr. Corral diagnosed Mr. Sanchez Contreras with a language disorder under the DSM-V-TR, finding that his verbal comprehension skills placed him in the fifth percentile of the population, and his working memory in the twenty-fifth percentile.  *Id.* ¶ 11.  She found that Mr. Sanchez Contreras "did not engage in reciprocal dialogue and chose to simply answer questions asked of him," and that he "struggled to communicate his feelings and symptoms with words."  Pet. ¶ 24.

Dr. Corral cautioned that Mr. Sanchez Contreras "may have difficulty finding the right words to express his thoughts and experiences," may "struggle to articulate details accurately," and that his "poor verbal comprehension can also make it difficult to understand questions posed by attorneys or the judge, which may lead him to answer incorrectly, evade the question, or provide unclear responses."  Pet. ¶ 26; Hesser Decl. ¶ 12.  She recommended that any tribunal evaluating his case use "clear and simplified communication," "visual aids," "short sentences," and "checking for understanding by asking clarifying questions."  Pet. ¶ 27.  Dr. Corral found nothing in her evaluation, Mr. Sanchez Contreras's demeanor, self-report, or childhood history suggesting any tendency toward violence or aggression.  Hesser Decl. ¶ 17.  Dr. Corral also diagnosed Mr. Sanchez Contreras as suffering from major depressive disorder and cannabis use disorder.  Pet. ¶ 28.

Believing at the time that Mr. Sanchez Contreras was subject to discretionary detention under 8 U.S.C. § 1226(a), his counsel filed a motion for custody redetermination on April 22, 2025.

Hesser Decl. ¶ 15.  Counsel withdrew that motion to discuss the evidentiary submission by the Department of Homeland Security ("DHS") with Mr. Sanchez Contreras.  *Id.*  She refiled the motion on May 1, 2025.  *Id.[3]*  The immigration court scheduled a bond hearing for May 7, 2025.  *Id.* ¶ 16.

### 5.    The May 7, 2025 Bond Hearing and the Immigration Judge's Order

Both parties submitted evidence to the immigration judge who would hear Mr. Sanchez Contreras's custody redetermination motion.  Mr. Sanchez Contreras's counsel submitted his I-589 application, his declaration, letters of support from his father and stepmother, Dr. Corral's evaluation, country conditions reports on El Salvador, a decision granting relief under the CAT based on similar facts, the criminal records from Mr. Sanchez Contreras's sole arrest, the criminal history of the complaining witness in that case, and evidence concerning the documented misidentification of Latino youth as gang members by Suffolk County authorities and DHS.  *Id.* ¶ 17.

Mr. Sanchez Contreras denied that he was a member of MS-13.  *Id.* ¶ 19.  In his declaration, he explained that he believed that Suffolk County authorities had labeled him a gang "associate" because he had, on occasion, smoked with a high school classmate who later became an MS-13 member.  *Id.*  Mr. Sanchez Contreras asserted that he spent time with that person because he "was afraid of causing problems if he refused."  *Id.*

DHS, in turn, submitted an April 25, 2025 letter from the Suffolk County Police Department to ICE Homeland Security Investigations describing Mr. Sanchez Contreras as an "MS-13 Gang Associate of the Huntington Criminales Locotes Salvatrucha Clique."  Martinez Genao Decl. ¶ 8; Hesser Decl. ¶ 18.  The letter listed "occasions where Mr. Sanchez was allegedly interviewed as a

---

[3] The evidence available to Mr. Sanchez Contreras's counsel at that time may have included information identifying Mr. Sanchez Contreras as a member of MS-13, a designated terrorist organization.  Such evidence would undermine her original understanding that Mr. Sanchez Contreras was detained pursuant to 8 U.S.C. § 1226(a).

passenger in a car where someone was pulled over or arrested—two of which were allegedly 'confirmed MS-13 gang members.'" Hesser Decl. ¶ 18. DHS also submitted the U.S. Department of State's designation of MS-13 as a foreign terrorist organization and general news articles about MS-13. *Id.* DHS also presented a New York Post article; the arrest report from Mr. Sanchez Contreras's sole arrest, and a criminal history report. *Id.*

A bond hearing was held before an IJ on May 7, 2025. Dkt. No. 7-1 ("Tr."). Mr. Sanchez Contreras was present at the hearing, represented by Ms. Hesser, his counsel. *Id.* Mr. Sanchez Contreras provided testimony at the hearing with the assistance of a Spanish language interpreter. *Id.* The questioning focused principally on the question of whether Mr. Sanchez Contreras was a member or associate of MS-13.

After the close of evidence, DHS argued that Mr. Sanchez Contreras was subject to mandatory detention under 8 U.S.C. § 1226(c). *Id.* at 30. That was because, the Government asserted, the evidence had established that Mr. Sanchez Contreras was a member or associate of MS-13, a designated terrorist organization. Pet. ¶ 41; Tr. at 30–31.

DHS argued in the alternative that "[s]hould the court find that he is not subject to mandatory detention, respondent still has not met *his burden of proof that he is to demonstrate* he is not a danger to the community of the US." Tr. at 31–32 (emphasis added). In support of that alternative argument, the Government pointed to Mr. Sanchez Contreras's criminal conviction which arose as a result of his "intentionally placing a victim in reasonable fear of physical injury or death and that he pulled out a serrated steak knife and pointed it at the direction of the victim in September 2023." *Id.* at 32. As a result, the Government flagged, a protective order was issued against Mr. Sanchez Contreras to protect his victim. *Id.* The Government also pointed to the fact that Mr. Sanchez Contreras had been found in the company of known MS-13 gang members. *Id.* at 33.

The Government also argued that Mr. Sanchez Contreras was a flight risk. In support of

that argument, it pointed to Mr. Sanchez Contreras's lack of work and his two prior bench warrants. *Id.* at 34.

The IJ denied Mr. Sanchez Contreras's request for bond. She found his testimony to be "not credible." *Id.* at 38. The IJ found that "the evidence in the record shows that I have a reason to believe that you were a member of MS-13." *Id.* The IJ reviewed the substantial record evidence that supported her decision. *Id.* at 38–45. As a result, the IJ found that DHS was "likely to establish a charge that would subject Mr. Sanchez Contreras to mandatory detention." *Id.* at 40.

The IJ also made an alternative finding: "the court would also deny this application based on danger to the community." *Id.* at 42. In reaching this conclusion, the IJ focused on Mr. Sanchez Contreras's criminal conviction, the observation that he "is never really doing anything anywhere at any given time" and "seems to be smoking and drinking all over Huntington," and the fact that he had been in the company of individuals with criminal records when they were stopped by police. *Id.* at 43–45; Hesser Decl. ¶ 22. The IJ made no alternative finding as to flight risk. Tr. at 45.

The IJ's order and the hearing transcript did not address Mr. Sanchez Contreras's asserted cognitive limitations. Pet. ¶ 42. However, there is no dispute that the IJ had access to Dr. Corral's report when she made her decision.

### 6.    The Merits Hearing, the Removal Order, and the Appeals

A hearing on the merits of Mr. Sanchez Contreras's applications for relief from removal began immediately following the bond hearing on May 7, 2025. Hesser Decl. ¶ 23. Mr. Sanchez Contreras testified about his fear of removal to El Salvador. *Id.* He also presented the testimony of a country conditions expert. *Id.* The hearing concluded on June 2, 2025, following the testimony of a second country conditions expert. *Id.* Both experts testified that Mr. Sanchez Contreras would likely be detained and tortured if removed to El Salvador. *Id.*

On June 17, 2025, the IJ issued a written decision denying Mr. Sanchez Contreras's

application for asylum, withholding of removal, and protection under the CAT.  *Id.* ¶ 24; Martinez Genao Decl. ¶ 18.  She ordered that Mr. Sanchez Contreras be removed to El Salvador.  *Id.*  Mr. Sanchez Contreras appealed the IJ's decision to the Board of Immigration Appeals ("BIA") on July 11, 2025.  Hesser Decl. ¶ 25; Martinez Genao Decl. ¶ 19.  After full briefing by the parties, on May 7, 2026 the BIA adopted and affirmed the IJ's decision.  Hesser Decl. ¶ 26; Martinez Genao Decl. ¶ 20.

On May 8, 2026, Mr. Sanchez Contreras petitioned the United States Court of Appeals for the Second Circuit for review of the BIA's decision, and on May 11, 2026, he moved for a stay of removal.  Hesser Decl. ¶ 26; Martinez Genao Decl. ¶¶ 21–22; *see Sanchez Contreras v. Blanche*, No. 26-1287 (2d Cir. May 11, 2026).  Counsel for Mr. Sanchez Contreras asserts that she expects the Second Circuit appeal to take several months, if not a year or longer, and that, if he prevails, the most likely result will be a remand for further agency proceedings—not a final resolution of his removability.  Hesser Decl. ¶ 27.

## B.    Procedural History

On May 12, 2026, Mr. Sanchez Contreras filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  *See generally* Pet.  In his petition, Mr. Sanchez Contreras seeks an order directing his immediate release, or, in the alternative, a constitutionally adequate bond hearing before an immigration judge at which the government bears the burden of proving by clear and convincing evidence that his continued detention is justified.  *Id.* at 27–28.  Mr. Sanchez Contreras's argument relies heavily on the Second Circuit's opinion in *Black*, in which the Second Circuit held that "a noncitizen's constitutional right to due process precludes his unreasonably prolonged detention under section 1226(c) without a bond hearing."  *Black*, 103 F.4th at 138.

Mr. Sanchez Contreras argued that his sixteen months of detention was unreasonably prolonged under the standard established in *Black*.  Therefore, he argued, he was entitled to the

remedy for such a violation prescribed by the Second Circuit—an individualized bond hearing at which "the government [must] bear the burden of proving the need for continued detention." *Id.* at 155. Mr. Sanchez Contreras argued that in such a hearing consideration should be given to alternatives to detention, his ability to pay, and the competency safeguards identified in Dr. Corral's evaluation. In the alternative, Mr. Sanchez Contreras requested that the Court conduct a bond hearing itself pursuant to *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001). Pet.

On June 1, 2026, Respondents opposed the petition. Dkt. No. 15 ("Opp'n"). The next day, Respondents filed the declaration of Deportation Officer Felix Martinez Genao and supporting exhibits. *See generally* Martinez Genao Decl. While Respondents accepted that the Second Circuit's holding in *Black* is binding on this Court pending review by the United States Supreme Court, Respondents contended that Mr. Sanchez Contreras's removal proceedings have moved swiftly, and that the delays are the result of Mr. Sanchez Contreras's own efforts to appeal his removal order, and that therefore, the delay is not unduly prolonged. Respondents also argued that, properly applied, the factors outlined in *Mathews v. Eldridge* do not favor relief. They also argued that due process does not require consideration of alternatives to detention if the IJ finds that the petitioner is dangerous. Finally, they argued that Mr. Sanchez Contreras had shown neither a substantial claim nor the extraordinary circumstances required for the Court to grant immediate release on bond under *Mapp*.

The petition was fully briefed on June 10, 2026, when Mr. Sanchez Contreras filed his reply brief. Dkt. No. 17 ("Reply"). Mr. Sanchez Contreras argued that the binding framework established in *Black* required that the Court accept that Mr. Sanchez Contreras has due process rights notwithstanding the fact that he is subject to mandatory detention under Section 1226(c). He argued that the appropriate application of the *Mathews* test requires that he be granted a bond hearing. Petitioner also took aim at Respondents' contention that "*Black* does not allow

9

consideration of alternatives to detention" when considering a noncitizen's dangerousness. *Id.* at 6.
He pointed to the series of decisions in district courts in this Circuit that have held that if an adjudicator finds dangerousness, she must consider whether alternatives to detention would guard against the possibility of harm to the public. *Id.* at 7.

Mr. Sanchez Contreras affirmed his desire for the Court to hold the bond hearing, rather than having the hearing be conducted by an IJ. He advanced two principal arguments in support of the request. First, that the impartiality of IJs should be questioned as a general matter, given that they are employees of the Department of Justice. *Id.* at 9. As a result, he argues that the result of a proceeding conducted by an IJ is "predetermined." *Id.* at 8. Mr. Sanchez Contreras also argued that the IJ who held his hearing, "may have already prejudged his character and may not be a neutral adjudicator given her comments that Mr. Sanchez is a danger to the community . . . ." *Id.* at 10. Mr. Sanchez Contreras withdrew his application for immediate release on bond under *Mapp. Id.* at 2.

## III.    LEGAL STANDARD[4]

### A.    Petition for Habeas Corpus Under Section 2241

Mr. Sanchez Contreras brings this petition for a writ of habeas corpus under 28 U.S.C. § 2241. Section 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of

---

[4] The parties agree that Mr. Sanchez Contreras's detention is authorized, if at all, under 8 U.S.C. § 1226(c) rather than 8 U.S.C. § 1231, notwithstanding the fact that he is subject to a final order of removal. "Section 1231 does not govern the detention of immigrants whose removal has been stayed pending judicial review." *Hechavarria v. Sessions*, 891 F.3d 49, 56 (2d Cir. 2018), *as amended* (May 22, 2018). Here, the Court is not aware that removal has been stayed. However, the Court understands that the Government's forbearance policy applies while Mr. Sanchez Contreras's appeal is pending in the Second Circuit. "While a petition is pending in this Court, the Government's forbearance policy has assured that removal will not occur." *In re Immigr. Petitions for Rev. Pending in U.S. Ct. of Appeals for Second Cir.*, 702 F.3d 160, 162 (2d Cir. 2012). As a result, the Court accepts that Petitioner's detention is authorized pursuant to Section 1226(c), rather than Section 1231.

their detention." *Lopez v. Sessions*, No. 18 Civ. 4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)). "Jurisdiction over 28 U.S.C. § 2241 habeas petitions is properly limited to purely legal statutory and constitutional claims and does not extend to review of discretionary determinations by immigration judges." *Id.* (quotation and brackets omitted). The Court must "summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### B. The Attorney General's Authority to Detain Noncitizens Pending Removal

Section 1226 of Title 8 generally governs the process of arresting and detaining noncitizens pending their removal. *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). Section 1226(a) sets out a default rule of discretionary detention, providing that the Attorney General may detain a noncitizen "pending a decision on whether the alien is to be removed from the United States," and "'may release' an alien detained under § 1226(a) 'on . . . bond' or 'conditional parole.'" *Id.* (quoting 8 U.S.C. § 1226(a)(2)).

Section 1226(c) establishes a category of noncitizens who are subject to mandatory detention. *Id.* at 289. It requires that the Attorney General "*shall* take into custody," 8 U.S.C. § 1226(c)(1) (emphasis added), any noncitizens "who have committed one of certain listed offenses or who have been identified by the government as involved in terrorist activities." *Black*, 103 F.4th at 140–41. For such persons, the statute "allows release in extremely limited circumstances: 'only if the Attorney General decides . . . that release of the alien from custody is necessary for [witness protection purposes].'" *Id.* at 141 (quoting 8 U.S.C. § 1226(c)(4)).

### C. Due Process Rights of Noncitizens Detained for Prolonged Periods Under Section 1226(c)

In the Second Circuit, noncitizens' due process rights can require that they be afforded a bond hearing notwithstanding the language in Section 1226(c) that mandates the detention of certain noncitizens. In *Black,* the Circuit answered the open question of whether "prolonged detention

11

under section 1226(c) without a bond hearing will *at some point* violate an individual detainee's due process rights." *Id.* at 142 (emphasis in original). The Circuit held that "due process bars the Executive from detaining . . . individuals for an unreasonably prolonged period under section 1226(c) without a bond hearing." *Id.* at 143. The Circuit stated that "any immigration detention exceeding six months without a bond hearing raises serious due process concerns." *Id.* at 150. Nonetheless, the court of appeals declined to adopt a "bright-line constitutional rule requiring a bond hearing after six months of detention—or after any fixed period of detention." *Id.* Instead, it held, "due process challenges to prolonged detention under section 1226(c) should . . . be reviewed" under the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) ("*Mathews*"). *Id.* at 147.

The *Mathews* test requires courts to balance the following three factors: "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (quoting *Mathews*, 424 U.S. at 335).

## IV.     DISCUSSION

### A.     The *Mathews* Factors Require a Bond Hearing

All of the factors described in *Mathews* weigh in favor of Petitioner's request that he be granted a bond hearing. The Court considers each factor in turn below.

#### 1.     The Private Interest Weighs in Favor of Bond Hearing

Mr. Sanchez Contreras's private interest weighs heavily in favor of the need for a bond hearing. The first *Mathews* factor considers "the private interest that will be affected by the official action." *Id.* Mr. Sanchez Contreras's continued detention without a bond hearing implicates "the most significant liberty interest there is—the interest in being free from imprisonment." *Id.* "Case

12

after case instructs us that in this country liberty is the norm and detention 'is the carefully limited exception.'" *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)).

For several reasons, Mr. Sanchez Contreras's liberty interest in being free from continued detention is substantial. First, Mr. Sanchez Contreras has been detained for a prolonged period—more than sixteen months. The Second Circuit has noted "that any immigration detention exceeding six months without a bond hearing raises serious due process concerns." *Black*, 103 F.4th at 150. Mr. Sanchez Contreras's sixteen months of detention is now more than two and a half times that length. His detention is longer than the seven-month detention the Second Circuit found constitutionally significant in *Black*, and longer even than the fifteen-month deprivation of liberty that the Circuit found unconstitutional "on any calculus" in *Velasco Lopez*. 978 F.3d at 851. How much additional time may elapse before Mr. Sanchez Contreras may be released is uncertain: his petition for review remains pending before the Second Circuit—an appeal that, on this record, will likely take many months, if not longer, and that, even if successful, may result only in a remand for further agency proceedings.

Second, Mr. Sanchez Contreras's day-to-day experience of detention reinforces this conclusion. He has been confined for over a year at OCCF, a local correctional facility used to house criminal defendants and sentenced prisoners, under conditions the Second Circuit has recognized as indistinguishable from criminal incarceration notwithstanding the civil nature of the proceedings against him. *Id.* at 851–52. He is separated from his father and stepmother, with whom he has a close relationship and with whom he intends to reside upon release. He has continued to suffer from a major depressive disorder that, while now in partial remission, is likely not improved as a result of his lengthy period of incarceration.

Respondents counter that a noncitizen detained pursuant to Section 1226(c) does not have a right to be free from detention during removal proceedings. Opp'n at 12. However, this argument

13

is foreclosed by the Circuit's decision in *Black*, with which this Court remains bound.

Based on the duration of Mr. Sanchez Contreras's detention and the toll it takes for reasons particular to him, the Court finds that the first *Mathews* factor—the private interest affected by the Government's action—heavily favors a bond hearing to assess the continued need for detention.

### 2.      The Risk of Erroneous Deprivation Weighs in Favor of Bond Hearing

The second *Mathews* factor also weighs in favor of a bond hearing. The second *Mathews* factor concerns "the risk of an erroneous deprivation" of Mr. Sanchez Contreras's liberty, and "the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. "The only interest to be considered at this part of the *Mathews* analysis is that of the detained individuals—not the government." *Black*, 103 F.4th at 152.

The "Joseph" hearing used to determine whether Mr. Sanchez Contreras was subject to Section 1226(c) did not provide adequate safeguards on its own. In *Black*, the Second Circuit noted that "the procedures used for section 1226(c) detainees are very few. They include no mechanism for a detainee's release, nor for individualized review of the need for detention. The only procedural protection in place is the *Joseph* hearing, at which noncitizens can contest whether they in fact committed a crime that makes them subject to mandatory detention." *Id.* (internal quotations and citation omitted). Therefore, in the mine run of cases, *Black* instructs that a *Joseph* hearing does not provide adequate safeguards that weigh against holding a bond hearing.

This case is somewhat different from the norm, because the IJ made an alternative finding that Mr. Sanchez Contreras was a danger to the community. Tr. at 42. The parties had the opportunity to make arguments regarding Mr. Sanchez Contreras's danger to the community and flight risk.

However, additional process is still merited here for two principal reasons. First, the IJ made her determination regarding dangerousness on the premise that Mr. Sanchez Contreras—not the

14

Government—bore the burden of proof. *See id.* at 31–32 (Government arguing that Mr. Sanchez Contreras had not met "*his* burden of proof that *he* is to demonstrate he is not a danger to the community of the US." (emphasis added)). Second, the focus of the hearing was on whether Mr. Sanchez Contreras was a member of MS-13, not his dangerousness and risk of flight. A hearing focused on those issues might well prompt the parties to present different evidence and arguments to the court.

The Government's suggestion that Mr. Sanchez Contreras's merits hearing provides adequate process in lieu of a bond hearing is not persuasive. Mr. Sanchez Contreras has had a merits hearing regarding his petition for asylum and under the CAT. It has been denied. However, because a merits hearing is not a bond determination, the Court does not consider it to be a substitute for the "individualized review of the need for detention." *Black*, 103 F.4th at 152. One of the petitioners granted relief in *Black* also had fully litigated the merits of his immigration case. *Id.* at 140.

In light of "the almost nonexistent procedural protections" available to Mr. Sanchez Contreras during his *Joseph* hearing, *id.* at 152, and the potential for an individualized assessment of the need for further detention to result in his release, the second *Mathews* factor also favors a bond hearing. The need is less because the issue of dangerousness was considered by the IJ in the alternative during the May 7 hearing, but the second factor still weighs in favor of granting a bond hearing.

### 3. The Government's Interest Does Not Weigh Materially Against a Bond Hearing

The Government's interest does not weigh materially against a bond hearing. The third *Mathews* factor considers the Government's interest, including "the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Respondents argue that Mr. Sanchez Contreras's continued detention assures both his

appearance at future proceedings and the protection of the public from any danger he may pose.

Opp'n at 13–14.  The Government made the same argument in *Black*.  The Second Circuit there,

while recognizing that assuring a noncitizen's appearance and protecting public safety are

"legitimate" and "well-established" interests, held that holding a bond hearing "do[es] nothing to

undercut those interests."  *Black*, 103 F.4th at 153. The Government, it stated, "has not articulated

an interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight."

*Id.* at 154 (quoting *Velasco Lopez*, 978 F.3d at 854).  The same is true here.

Respondents do not separately address the fiscal and administrative burdens of a bond

hearing.  In *Black*, the Circuit acknowledged that "having to do something instead of nothing

imposes an administrative and fiscal burden of some kind," but found that this burden "will likely be

outweighed by costs saved by reducing unnecessary detention."  *Id.* at 154–55.  Consistent with

*Black*, the Court finds that, as in any such case, a bond hearing stands to cost the Government time

and resources, but that these costs merit limited weight in the *Mathews* analysis.  This factor does not

materially favor Respondents.

### 4.    Overall Assessment

Guided by *Black*, the Court finds that these factors, viewed in combination, support

affording Mr. Sanchez Contreras a bond hearing.  The first two factors—his substantial liberty

interest and the risk of error inherent in depriving him of an individualized hearing—outweigh the

third—the modest administrative cost a hearing imposes on the Government.  The Circuit

recognized in *Black* that the Government's legitimate administrative interests may justify a "relatively

short-term deprivation of liberty," but that "the balance of interests shifts as the noncitizen's

detention is prolonged without any particularized assessment of need."  *Id.* at 154.  Such is the case

here.  Mr. Sanchez Contreras has been detained for more than sixteen months.  The immigration

judge's assessment of dangerousness was made in the alternative during a hearing focused on a

16

separate question—Mr. Sanchez Contreras's criminal associations.  And in making that assessment, the immigration judge placed the burden of proof on Mr. Sanchez Contreras, rather than the Government.  With his removal proceedings now before the Second Circuit, and the appeal process likely to last months if not longer, there is no clear end point for his detention.  He therefore has a substantial liberty interest in a hearing to test the need for his continued detention—an interest that outweighs the Government's legitimate, but finite, interest in avoiding the administrative burdens of such a hearing.

The Court finds that Mr. Sanchez Contreras's detention has been sufficiently prolonged to require a bond hearing as a matter of procedural due process.  *See, e.g.*, *id.* at 155 (ordering bond hearing where noncitizen had been detained under Section 1226(c) for seven months without such a hearing); *Velasco Lopez*, 978 F.3d at 855 n.13 (same after fifteen months).

### B.    What Procedural Protections Are Due

The Court briefly considers issues raised by the parties as to the nature of the upcoming bond hearing.

### 1.    Proper Tribunal to Hold the Bond Hearing

There is no good reason for this Court to hold the bond hearing.  The Court sees "no basis to depart from the common practice of ordering a bond hearing before an IJ, whose expertise and experience in this area will enable efficient resolution of the proceedings consistent with immigration court precedents." *D.C. v. Noem*, No. 26 Civ. 1833, 2026 WL 787895, at *11 (S.D.N.Y. Mar. 20, 2026).

Mr. Sanchez Contreras has not shown that the IJ who presided over his hearing is biased such that the Court should assume her role, or direct the appointment of a different IJ.  Mr. Sanchez Contreras argues that IJ "may have already prejudged his character and may not be a neutral adjudicator given her comments that Mr. Sanchez is a danger to the community . . . ." Reply at 10.

But the IJ did not "prejudge" her view of Mr. Sanchez Contreras; she "judged" it based on the evidence presented to her by the parties at an evidentiary hearing. "[A]nd simply because a judge rejects an argument or rules against a party does not mean they are biased." *Zappin v. NYP Holdings Inc.*, 769 F. App'x 5, 11 (2d Cir. 2019) (summary order) (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

### 2.    Procedural Protections at the Bond Hearing

Mr. Sanchez Contreras is entitled to an individualized hearing at which DHS will bear the burden of establishing, by clear and convincing evidence, that his continued detention is justified. *Black*, 103 F.4th at 155. The parties do not dispute that this is the remedy required by *Black*. Opp'n at 16–17.

However, the parties debate whether the IJ can consider alternatives to detention when assessing his dangerousness. Mr. Sanchez Contreras argues that the IJ should consider alternatives to detention in assessing both danger to the community and flight risk, and his ability to pay, in setting any bond. Respondents acknowledge that *Black* supports the conclusion that an IJ must consider alternatives to detention with respect to flight risk and ability to pay with respect to the size of the bond, but argue there is "no basis" for an IJ to consider alternatives to detention with respect to danger. *Id.* at 16–18.

The Government's argument rests on a reasonable interpretation of a sentence in the Second Circuit's opinion in *Black*. There, the Circuit wrote that "we stress that a showing of dangerousness by clear and convincing evidence would foreclose any possibility of bond." *Black*, 103 F.4th at 159. This language can be read, as the Government does, to mean that once dangerousness is shown, no bond conditions are appropriate. However, the Court agrees with Judge Engelmayer's conclusion in *D.C. v. Noem*, 2026 WL 787895, at *12 (collecting cases). Due process requires an immigration judge to consider alternatives to detention when evaluating whether a noncitizen poses a danger to the

community.

This conclusion is consistent with the language used by the Circuit in *Black*—the determination of whether the noncitizen poses a danger embeds an assessment of whether alternatives to detention would mitigate the risk. If, having done so, the immigration judge determines that the noncitizen is a danger, there is no need to consider further bond conditions. The Court believes that this was the assumption underlying the language in *Black* upon which the Government's argument relies.

## V.    CONCLUSION

For the foregoing reasons, Mr. Sanchez Contreras's petition for habeas corpus is GRANTED. For the avoidance of doubt, this opinion should not be read to suggest any view regarding the appropriate outcome of any bond hearing with respect to Mr. Sanchez Contreras: in particular, it does not suggest that the evidence presented to the IJ in connection with the May 7 hearing would not support the conclusion that Mr. Sanchez Contreras is a danger to the public even when the Government bears the burden of proof.

By no later than July 3, 2026, Respondents shall provide a bond hearing to Mr. Sanchez Contreras. Consistent with this decision, at that hearing: (1) the Government will have the burden of proof to establish by clear and convincing evidence that Mr. Sanchez Contreras poses a flight risk or danger to the public; (2) the IJ must consider alternatives to detention in assessing both his flight risk and any future dangerousness; and (3) the IJ, in setting the amount of any bond, must consider Mr. Sanchez Contreras's ability to pay.

Respondents are ordered to: (1) file a letter on the docket by **June 24, 2026 at 5:00 p.m.**, confirming that the bond hearing has been scheduled and stating the date and time when it will occur; (2) furnish this decision to the IJ meaningfully in advance of the hearing; and (3) file a letter on the docket by **July 6, 2026 at 5:00 p.m.**, with an update as to the outcome of the bond hearing.

19

The Court retains jurisdiction over this matter to ensure compliance with this decision.

The Clerk of Court is directed to enter judgment for Petitioner and to close this case.

SO ORDERED.

Dated: June 22, 2026
New York, New York

_____
GREGORY H. WOODS
United States District Judge